UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

DJENABA DIALLO                                              CV

                                    Plaintiff,

          -against-                                        **COMPLAINT**

HELENE FULD COLLEGE OF NURSING                  **JURY TRIAL REQUESTED**

                                    Defendant.
----------------------------------------------------------------x

<u>**COMPLAINT**</u>

Plaintiff Djenaba Diallo (hereafter referred to as "Plaintiff"), by counsel, The Parker Law Group P.C., as and for the Complaint in this action against Defendant Helene Fuld College of Nursing (also referred to as "Defendant"), hereby alleges as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.      This lawsuit opposes inexcusable disability discrimination by the Defendant. In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, nominal damages, and attorney's fees, costs, and expenses to redress Defendant's unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations; Section 504 of the Rehabilitation Act ("Section 504") 29 U.S.C. § 794, *et. seq.*; the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"); the New York State Civil Rights Law, § 40 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code'"). Defendant is vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. §

12188, 29 U.S.C. § 794, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal

questions regarding the deprivation of Plaintiff's rights under the ADA and Section 504

of the Rehabilitation Act. The Court has supplemental jurisdiction over Plaintiff's related

claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

Defendant's acts of discrimination alleged herein occurred in this district and

Defendant's nursing School (place of public accommodation) that is the subject of this

action is in this district.

## PARTIES

4.      At all times relevant to this action, Plaintiff Djenaba Diallo has been and

remains currently a resident of the City of New York.

5.      At all times relevant to this action, Plaintiff Djenaba Diallo has been and

remains a person with a disability. Plaintiff has medical conditions that inhibit walking

and uses a cane for mobility.

6.      Defendant Helene Fuld College of Nursing (hereinafter also referred to as

the "School") owns and operates a nursing School located at 24 East 120th Street in New

York County, New York.

7.      Dr. Joyce Griffin-Sobel is the President/CEO of defendant Helene Fuld

College of Nursing.

8.      Defendant is licensed to and does business in New York State.

9. Defendant is a public accommodation as it owns, leases, leases to, controls and/or operates a place of public accommodation, the Helene Fuld College of Nursing, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

10. The Helene Fuld College of Nursing is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a place of education by a private entity and its operations affect commerce.

11. Helene Fuld College of Nursing provides opportunities for a professional career in nursing through three programs:

    i. An accelerated LPN to RN/AAS track, which can be completed in 18 months;
    ii. A generic baccalaureate in nursing program for students with no prior nursing degree, and which can be completed in 28 months; or
    iii. A baccalaureate in nursing completion program for registered nurses.

12. In April 2024, the Helene Fuld College of Nursing accepted Plaintiff to enroll in the Generic Bachelor's of Science program.

13. Plaintiff enrolled in the Helene Fuld College of Nursing with the intention of obtaining a degree for a career in nursing.

14. Plaintiff's enrollment was dependent upon her completion of the Helene Fuld College of Nursing's health requirements.

15. The health requirements included passing a physical examination, which Plaintiff successfully passed.

16.    In the Fall Semester of 2024, Plaintiff began her studies at the Helene Fuld College of Nursing.

17.    For the Fall Semester of 2024, Plaintiff enrolled in five classes.

18.    Four of the five classes were online, and so Plaintiff did not have to physically be present at the School during those classes.

19.    The one in-person class was Life Sciences.

20.    The Life Sciences class was primarily a lecture class that was taught at the School. This class was held on Wednesdays from 4:30 p.m. until around 7 p.m. or 9 p.m.

21.    Because of her mobility disability, Plaintiff has difficulty with negotiating stairs for travel within the building containing the Helene Fuld College of Nursing

22.    Consequently, in or around September 2024, Plaintiff requested that the Helene Fuld College of Nursing give her permission to use the elevator to travel within the School building. With that request, Plaintiff provided written supporting documentation.

23.    The Helene Fuld College of Nursing gave Plaintiff an elevator pass, which allowed her to use the elevator to travel within the School building during the Fall Semester of 2024.

24.    Plaintiff utilized her elevator pass without incident during the Fall Semester of 2024.

25.    Plaintiff completed and passed all her classes during the Fall Semester of 2024 including the in-person Life Sciences class with an A+ average.

26.    Plaintiff desired and intended to continue her nursing studies during the Spring Semester of 2025, which started in January 2025.

27.     In January 2025, Plaintiff requested that the Helene Fuld College of Nursing renew her elevator pass to allow her to use the elevator to travel within the School building.

28.     The Helene Fuld College of Nursing informed Plaintiff that they would not accept the documentation that was acceptable in September 2024 for Plaintiff to receive an elevator pass.

29.     The Helene Fuld College of Nursing now wanted Plaintiff to provide more detailed medical information.

30.     The Helene Fuld College of Nursing explicitly asked Plaintiff what her medical injuries were without regard to their relevacy to the need for an elevator pass.

31.     Indeed, the Helene Fuld College of Nursing requested that Plaintiff provide medical documentation detailing Plaintiff's medical condition.

32.     Plaintiff would not receive an elevator pass unless she complied with Defendant's invasive and unlawful medical inquiry.

33.     Desperate for the elevator pass, Plaintiff complied with this invasive and unlawful request by directing her doctor to provide the School with her medical information.

34.     Upon information and belief, Defendant does not request medical information from non-disabled students as a prerequisite to take classes each semester.

35.     On January 29, 2025, Plaintiff provided the Helene Fuld College of Nursing with a letter from her doctor with more detailed medical information (this letter is hereinafter referred to as the "First Doctor's Letter").

36.    The First Doctor's Letter informed the School that "if you need any further information, please call this office."

37.    After receiving the First Doctor's Letter, the Helene Fuld College of Nursing never called Plaintiff's doctor's office or asked Plaintiff for permission to communicate with her doctor.

38.    After receiving the First Doctor's Letter, the Helene Fuld College of Nursing never communicated with Plaintiff concerning the doctor's letters or what Plaintiff could or could not do with regard to School.

39.    On January 29, 2025, immediately after receiving the First Doctor's Letter, the Helene Fuld College of Nursing expelled Plaintiff from continuing School.

40.    The reason given by the Helene Fuld College of Nursing for expelling Plaintiff from continuing School was because "attending the program under the conditions outlined in your doctor's letter violates our Technical Standards."

41.    To reassure the Defendant that Plaintiff could continue attending School, Plaintiff's doctor wrote a second letter explicitly stating that Plaintiff could attend School.

42.    On January 29, 2025, Plaintiff provided the Helene Fuld College of Nursing with this second letter from her doctor stating that Plaintiff was in "need of an elevator pass. **Patient is able to attend School**" (this letter is hereinafter referred to as the "Second Doctor's Letter") (emphasis added).

43.    On January 29, 2025, President Dr. Joyce Griffin-Sobel wrote to Plaintiff that:

> Your physician's second letter [Second Doctor's Letter] is not sufficient. You must be able to meet the Technical Standards described on pages 24 –

25 of the Student Handbook, which specifically lists moving and transferring patients with or without a lifting or assistive devices, having the endurance to complete all required tests and navigate treatment areas with precision and speed, among others. Your physician letter specifically stated you cannot do many of those tasks.

While I realize you are disappointed, the College cannot take the risk of your furthering your injury or injuring a patient because of your current abilities.

44.     Plaintiff immediately replied and begged the School to allow her to continue.

45.     Plaintiff attached the Second Doctor's Letter that confirmed that she is able to attend School with the accommodation of an elevator pass.

46.     To be crystal clear, Plaintiff never requested any disability related modifications or accommodations to the coursework requirements for her Spring Semester of 2025. For example, Plaintiff never requested that she be excused from performing any physical activity relating to her classes. The only disability-related accommodation at issue was Plaintiff's need for an elevator pass.

47.     Despite receiving a medical letter stating that Plaintiff was able to attend School, the Defendant made no effort to engage in any dialogue or investigation concerning whether Plaintiff could attend School for the Spring Semester of 2025.

48.     With the accommodation of providing Plaintiff with an elevator pass, Plaintiff could have successfully attended the one (1) in person class that she had enrolled in for the Spring Semester of 2025 (the remaining four classes were online).

49.     Plaintiff asked for the President to meet with her and any faculty from the previous semester who witnessed Plaintiff's attendance and could attest to her capability to function normally without risk or danger to others.

7

50.     The School refused.

51.     Plaintiff asked for the opportunity to meet with the School to discuss her disability and its alleged impact, but the School refused to engage in an interactive dialogue process with Plaintiff.

52.     Plaintiff reminded the School that she would not be doing "clinicals" for at least another year, which meant that her Spring Semester of 2025 would not involve any interactions with patients and no need to navigate treatment areas.

53.     In fact, Plaintiff's Spring Semester of 2025 was identical to her fall 2024 semester in all relevant respects.

54.     For the Spring Semester of 2025, Plaintiff was enrolled in five classes.

55.     Four of those five classes were online, and so Plaintiff did not have to physically be present at School during those classes.

56.     The one class that was not given online was Anatomy and Physiology.

57.     The Anatomy and Physiology I class is primarily a lecture class that is taught at the School. This class was held on Wednesdays from 11:00 a.m. until around 2 p.m. or 3 p.m. with a lunch break from noon to 1 p.m.

58.     In fact, aside from the subject matter, the Life Sciences class and the Anatomy and Physiology I have identical class descriptions:

> 3-semester credits (2 Lecture/1 Lab)
> Lecture: Two 50-minute sessions per week for 15 weeks
> Lab: Two 50-minute sessions per week for 15 weeks
> This course, with breaks, is assigned 2 hours for lecture and 2 hours for lab, for a total of 4 hours on the same or differing days.

59.     There is no mention of patient contact or physical activity in the subject matter class descriptions for the Life Sciences and the Anatomy and Physiology I classes.

60.    None of Plaintiff's Spring 2025 classes (including the Anatomy and Physiology class) required Plaintiff to interact with patients.

61.    None of Plaintiff's Spring 2025 classes (including the Anatomy and Physiology class) required Plaintiff to navigate treatment areas.

62.    None of Plaintiff's Spring 2025 classes would have put Plaintiff in a position to endanger the safety of patients or her classmates.

63.    None of Plaintiff's Spring 2025 classes would have put Plaintiff in a position to endanger her safety especially since her First Doctor's Letter explicitly stated that Plaintiff is "able to attend School."

64.    Plaintiff's medical conditions did not change from September 2024 to January 2025.

65.    So, with regard to class participation and attendance, anything that Plaintiff could perform in September 2024 could also be performed in January 2025.

66.    With regard to the Life Sciences class that Plaintiff attended in person during the Fall Semester of 2024, Plaintiff never received any communications from the Helene Fuld College of Nursing concerning including no communications concerning her attendance, or participation.

67.    Plaintiff was physically able to attend and participate in the Life Sciences class at the Helene Fuld College of Nursing.

68.    Plaintiff did not injure herself or others while attending and participating in the Life Sciences class at the Helene Fuld College of Nursing.

69.    Plaintiff did not pose a threat to herself or others as a result of attending and participating in the Life Sciences class at the Helene Fuld College of Nursing.

70.    Plaintiff could have taken her anticipated spring 2025 classes in the same way as she took her fall 2024 classes.

71.    Plaintiff is qualified to be a student at the Helene Fuld College of Nursing.

72.    With the disability related accommodation of an elevator pass, Plaintiff could have traveled to all the floors in the building comprising the Helene Fuld College of Nursing.

73.    Plaintiff is physically able to participate and successfully complete the courses that she had enrolled in for the Spring Semester of 2025 at the Helene Fuld College of Nursing.

74.    Defendant discriminated against Plaintiff based on perceived disabilities.

75.    Defendant has not satisfied their statutory obligation to ensure that their policies, practices, procedures for people with disabilities are compliant with the laws. Nor have Defendant made or provided accommodations or modifications for persons with disabilities.

76.    Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendant's non-compliance with the laws prohibiting disability discrimination.

77.    Plaintiff invested significant financial resources, including taking out a loan and paying out-of-pocket expenses, to be a student at the Helene Fuld College of Nursing.

78.    Plaintiff desires to have a successful career in nursing.

79.    The Defendant's unlawful conduct has delayed Plaintiff's career as a nurse and thus caused and damaged Plaintiff to lose the ability to earn a higher income.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

80.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

81.    Plaintiff is limited in the life activity of walking and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a cane for mobility.

82.    Title III of the ADA prohibits public accommodations from engaging in "discrimination." 42 U.S.C. §§ 12181–89.

83.    Defendant committed discrimination under the ADA by "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(i).

84.    Defendant committed discrimination under the ADA by "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" 42 U.S.C. § 12182(b)(2)(A)(ii).

85.    Defendant committed discrimination under the ADA by "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 42 U.S.C. § 12182(b)(2)(A)(iii).

86.    Defendant committed discrimination under the ADA by "subjecting an individual or class of individuals on the basis of a disability or disabilities of such

individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

87.    Defendant committed discrimination under the ADA by "utilizing standards or criteria or methods of administration— (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12182(b)(1)(D).

88.    Defendant violated the ADA by imposing eligibility criteria that preclude those with a disability from enjoying their goods, services, facilities, privileges, advantages, or accommodations.

89.    Defendant violated the ADA by imposing eligibility criteria that screened out or tended to screen out people with disabilities from enjoying Defendant's goods, services, facilities, privileges, advantages, or accommodations.

90.    Defendant violated the ADA by implementing discriminatory eligibility criteria that were not necessary for the provision of their goods, services, facilities, privileges, advantages, or accommodations.

91.    Defendant violated the ADA by utilizing standards, criteria and/or methods of administration that have the effect of discriminating on the basis of disability.

92.    Defendant violated the ADA by failing to modify policies, practices, or procedures to allow those with a disability to enjoy their goods, services, facilities, privileges, advantages, or accommodations.

93.    Defendant violated the ADA because modifying their policies, practices, or procedures to allow those with a disability to enjoy their goods, services, facilities, privileges, advantages, or accommodations would not fundamentally alter the nature of their goods, services, facilities, privileges, advantages, or accommodations.

94.    Defendant violated the ADA because modifying their policies, practices, or procedures to allow those with a disability to enjoy their goods, services, facilities, privileges, advantages, or accommodations would not result in an undue burden upon the Defendant.

95.    Defendant violated the ADA because modifying their policies, practices, or procedures to allow those with a disability to enjoy their goods, services, facilities, privileges, advantages, or accommodations would be readily achievable for the Defendant.

96.    Defendant discriminated against Plaintiff because of her disability as well as because of her perceived disability.

97.    Defendant has and continues to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability. Defendant's policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT)

98.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

99.    Plaintiff is an individual with a disability as defined by the Rehabilitation Act, 29 U.S.C. § 705(20).

100.     Section 504 of the Rehabilitation Act of 1973 (hereinafter also referred to as "Section 504"), 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ..

101.     Defendant has received federal financial assistance and aid at all relevant times.

102.     Through the acts and omissions alleged herein, Defendant has, solely because of Plaintiff's disabilities, excluded Plaintiff from participation in Defendant's programs and activities and denied Plaintiff the benefits of Defendant's programs and activities, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794, *et. seq.* and the regulations promulgated thereunder.

103.     "Any person aggrieved by any act or failure to act by any recipient of Federal Assistance . . . under section 794" is entitled to the "remedies, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

104.     42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

105.    Plaintiff is also entitled to other forms of compensatory damages beyond emotional-distress damages because Defendant is subject to remedies traditionally available in suits for breach of contract.

106.    Accordingly, Plaintiff had an expectation interest in receiving equal enjoyment and opportunity of the Defendant's offerings as nondisabled people.

107.    Defendant denied Plaintiff these expectation interests. Accordingly, Plaintiff should be entitled to compensatory damages under expectation interest.

108.    Plaintiff has also suffered stigmatic injury and dignitary harm as a result of Defendant's discriminatory conduct.

109.    Plaintiff had an expectation interest of a discrimination free interaction with the Defendant.  But Defendant's discrimination breached Plaintiff's expectation thereby causing Plaintiff to suffer damages based on impairment to expectation interest.

110.    Defendant's acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to Plaintiff.

111.    Defendant acted with deliberate indifference to Plaintiff's rights guaranteed under Section 504.

112.    Defendant has had actual knowledge of the discrimination and deliberately decided not to address the discrimination and institute corrective measures.

113.    As a proximate result of Defendant's violations of Section 504, Plaintiff has been injured and continues to be injured, as set forth herein in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**(VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

114.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

115.    Plaintiff has various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activity of walking. Plaintiff therefore has a disability within the meaning of the Executive Law § 296(21).

116.    In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

117.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

118.    Defendant has and continues to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation because Plaintiff is a person with a disability.

119.    As a direct and proximate result of Defendant's unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

120.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

121.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

122.    Plaintiff has various medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of walking - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

123.    Defendant has and continues to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

124.    Defendant has and continues to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

125.    Defendant has subjected, and continues to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their private School because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

126.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendant has and continues to, aid and abet, incite, compel, or coerce others in their acts of directly

and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their private School and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

127.    Defendant's conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

128.    Defendant's conduct violated the NYCHRL, Administrative Code 8-107 (15), which requires public accommodations to provide reasonable accommodations to people with disabilities.

129.    As stated before, Plaintiff could have successfully attended and completed her Spring Semester of 2025 classes had the Defendant provided Plaintiff with an elevator pass – the reasonable accommodation requested by Plaintiff.

130.    Defendant's conduct violated the NYCHRL, Administrative Code 8-107 (7), which prohibits retaliation against a person with a disability who requested a reasonable accommodation.

131.    Defendant's conduct violated the NYCHRL, Administrative Code 8-107 (28)(b), which prohibits a public accommodation from refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with the person who requested an accommodation or who the covered entity has notice may require an accommodation relating to disability.

132.    As stated before, Plaintiff requested that the Defendant engage in a cooperative dialogue with her, but Defendant refused to engage in a cooperative dialogue.

133.    Defendant's conduct violated the NYCHRL, Administrative Code 8-107 (28)(d), by failing to engage in a cooperative dialogue and by failing to provide a written final determination identifying any accommodation granted or denied.

134.    Defendant's conduct violated the NYCHRL, Administrative Code 8-107 (28)(e), by failing to make their adverse determination against Plaintiff without first engaging in a cooperative dialogue and by not making the adverse determination after engaging in the cooperative dialogue.

135.    Defendant has demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

136.    As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

137.    Defendant engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

138.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

139.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

140. Defendant discriminated against Plaintiff pursuant to New York State Executive Law.

141. Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

142. Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendant, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendant has violated the ADA and its implementing regulations, Section 504 of the Rehabilitation Act, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendant's place of public accommodation, and Defendant's policies, practices, and procedures;

B. Pursuant to ADA, Section 504 of the Rehabilitation Act, NYSHRL and the NYCHRL, enjoin Defendant from maintaining and/or applying policies and practices that discriminate and continues to discriminate against Plaintiff and other people with disabilities;

C. Retain jurisdiction over the Defendant until the Court is satisfied that the Defendant's unlawful practices, acts and omissions no longer exist and will not reoccur;

D.   Award Plaintiff compensatory damages and nominal damages because of Defendant's violations of Section 504 of the Rehabilitation Act, the NYSHRL and the NYCHRL;

E.   Award Plaintiff punitive damages to punish and deter the Defendant for violations of the NYCHRL;

F.   Award Plaintiff the monetary penalties for each violation of the law pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.   Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, Section 504 of the Rehabilitation Act, and the ADA; and

H.   For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: March 2, 2025
          New York, New York

                                        Respectfully submitted,

                                        **THE PARKER LAW GROUP P.C.**


                                        By:_____
                                              Glen H. Parker, Esq.
                                              Attorneys for Plaintiff
                                              28 Valley Road, Suite 1
                                              Montclair, New Jersey 07042
                                              Telephone: (347) 292-9042
                                              Email: ghp@parkerlawusa.com